UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT S. DUNCAN,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                Defendant.

CASE NO. C09-5187BHS

REPORT AND RECOMMENDATION

Noted for March 5, 2010

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). This matter has been briefed. Oral argument was considered on February 9, 2010. After considering the argument and reviewing the record, the undersigned recommends that the Court affirm the administrative decision.

## INTRODUCTION AND PROCEDURAL HISTORY

The primary issues in this case revolve around the utter absence of any medical testimony regarding plaintiff's alleged disability and residual function capacity from 1991 to December of 1996. Since the ALJ relied primarily on plaintiff's own uncontradicted testimony regarding

REPORT AND RECOMMENDATION - 1

plaintiff's disability and residual functional capacity during this period of time, the ALJ's conclusions should not be disturbed on appeal.

Plaintiff Robert Duncan was born in 1956. Tr. 243. Plaintiff has had two significant jobs, both occurring in California. First, he was employed by a small family-owned business, where he helped in the manufacture of playground equipment for over seven years. Tr. 444. He worked up to a foreman position. Id. The second job he had was at a hospital, where he worked as a maintenance supervisor. Tr. 443. Plaintiff worked at the hospital for a relatively short time (six to nine months), before he moved with his family up to Washington. Tr. 443-44. Plaintiff testified that back pain interfered with both jobs. Tr. 443. He explained that he initially hurt his back in an accident while participating in demolition derby. Tr. 441-43.

Plaintiff has not worked since his job at the hospital, and his back pain and medical issues have increased. Plaintiff filed an application for both supplemental security income benefits and Title II disability social security benefits in August and September of 2004. Tr. 39. Plaintiff alleged disability since June 1, 1991, due to back pain associated with a herniated disc. Tr. 57-61, 432.

A few months after filing his applications for social security benefits, plaintiff was taken to the emergency room by his family as they had observed that plaintiff had "altered levels of mental status or levels of consciousness" over the last month. Tr. 239. Plaintiff was admitted to the intensive care unit at the hospital with a diagnosis of acute and chronic respiratory failure, exacerbation of chronic obstructive pulmonary disease, probable pneumonia, cardiac arrhythmia, probable heart failure, probable obstructive sleep apnea syndrome, and probable obesity hypoventilation syndrome. Tr. 230, 245. After several weeks, he was transferred to an extended care facility for rehabilitation, and he was released in February, 2005. Tr. 217. He was re-

hospitalized a month later, as he had not been complying with the treatment recommendations and had a second episode of acute respiratory failure. Tr. 211-12. Several weeks later, he was again discharged to an extended care facility for rehabilitation. Tr. 200.

On September 6, 2005, based on this evidence, the administration granted plaintiff's application for supplemental security benefits. Plaintiff was determined to be unable to work, due to severe morbid obesity (weighing in excess of 400 pounds) and pickwickian syndrome. Defendant's Brief at 4, Tr. 383. However, the administration found insufficient evidence to establish that plaintiff was disabled prior to 1996. Tr. 383. Plaintiff's request for disability benefits was therefore denied.

Based on plaintiff's work record, he is eligible for disability insurance benefits only if he is able to establish that he became disabled on or before December 31, 1996. Tr. 53. Accordingly, the relevant time period to determine if plaintiff is entitled to disability benefits is June 1, 1991, plaintiff's alleged onset date, through December 31, 1996, plaintiff's date last insured (sometimes referred to as "DLI" in the record).

After initial denial, the matter was assigned for further review by an ALJ, who conducted a hearing on March 4, 2008. Tr. 428-64. At the hearing the ALJ heard testimony from plaintiff, Clarie Duncan (plaintiff's wife), and a vocational expert. There was a noticeable lack of medical evidence during the period in question, largely due to plaintiff's decision not to seek medical help during this period because of lack of funds. As a consequence, the ALJ was required to rely largely upon plaintiff's own testimony to determine the extent of plaintiff's disability and residual function. During the period in question, plaintiff testified that despite his back pain, he was able to sit three to five hours without having a problem. Tr. 437. Plaintiff further stated that he would have been able to stand 45 minutes to an hour without needing to lean on something

REPORT AND RECOMMENDATION - 3

and that he could walk about a block before needing to sit down. Tr. 437-48. Plaintiff told the ALJ that he was able to lift 50 to 60 pounds at a time in a safe manner and that he did not have any limitation in using his hands. Tr. 438. Plaintiff believed that he weighed approximately 240-260 pounds prior to December 2006. Tr. 439-40. His weight increased to 400 pounds after this date, apparently exacerbating his problems.

On June 12, 2008, the ALJ issued her decision, finding plaintiff was not entitled to disability benefits. Tr. 18-25. The ALJ found plaintiff had severe impairments, but through the date last insured (December 31, 2006), the ALJ found plaintiff had retained the ability to perform light to medium work. Tr. 20-24. Based on the testimony of the vocational expert, the ALJ concluded plaintiff was not disabled because he was able to perform several different jobs within the national economy during the relevant time period. Tr. 24-25.

Plaintiff appealed the ALJ's decision to the administration's Appeals Council, Tr. 13-14, but his request for review was denied. Tr. 4-7. Accordingly, the ALJ's decision is the final administrative decision, subject to judicial review. 20 C.F.R. §§ 404.981, 422.210.

On April 6, 2009, plaintiff filed the instant Complaint with the court. Plaintiff challenges the ALJ's decision, raising the following claims in his Amended Opening Brief (Doc. 18):

(1) The ALJ allegedly erred in her assessment of plaintiff's credibility and the lay evidence;

(2) The ALJ allegedly failed to properly determine the onset date of plaintiff's disability;

(3) The ALJ allegedly failed to properly assess the significance of plaintiff's obesity; and

(4) The ALJ allegedly erred in her assessment of plaintiff's residual functional capacity ("RFC").

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his or her impairments are of such severity that he or she is unable to do her previous work, and cannot, considering his or her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

# DISCUSSION

## 1. *The Medical Evidence And Testimony Properly Support The ALJ's Finding That Plaintiff Has Failed To Show He Was Disabled On Or Before December 2006*

Eligibility for disability insurance benefits under Title II of the Social Security Act is premised on the establishment of disability during a period that an individual is insured. 42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The claimant has the burden of proof, although the ALJ must assist in developing the record. Armstrong v. Comm'r of Social Security, 160 F.3d 587, 589 (9th Cir. 1998). Discussing application of Social Security Regulation ("SSR") 83-20, the Ninth Circuit held that where the record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date. Id. at 590. The Court explained that the ALJ is not required to be an advocate, but she must create a record that properly supports the basis for her findings and that calling a medical expert is one way of fulfilling this responsibility. Id.

Here, the record was sufficiently developed and complete; the ALJ did not need to call a medical expert to further develop the record as alleged by plaintiff. Since the information relied upon by the ALJ was largely from plaintiff, and was not ambiguous, and that the ALJ believed to be credible, there was no reason to call a medical expert to assist in determining the onset day.

A review of the record reflects the ALJ's and plaintiff attorney's efforts to obtain all the documentary evidence that could possibly shed light on plaintiff's physical condition prior to December 2006. The ALJ emphasized the importance of obtaining any relevant medical records, including forms completed by Dr. Lou. Tr. 431. The parties agreed that there were no medical records from when plaintiff stopped working in California until he was examined by doctors at Kaiser several years later. Therefore, there is no medical evidence during the relevant period. Tr. 432. Plaintiff's attorney wrote a letter to the ALJ, dated December 2007, attaching medical

REPORT AND RECOMMENDATION - 6

records from Kaiser Permanente dated 8/18/97 to 10/20/97. Tr. 100. Plaintiff's attorney explained that these records were "offered for the purpose of establishing disability as of Mr. Duncan's Date Last Insured, 12/31/96." Id. Plaintiff currently acknowledges that only fifteen pages of medical records in the file (Tr. 398-412, consisting of the records from Kaiser noted above) are dated in the 1990's; otherwise all of the medical evidence in the record is dated from 2004 and 2005. Amended Opening Brief at 12.

The medical evidence from Kaiser Permanente, dated August through October 1997, in combination with plaintiff's testimony provided a clear record for the ALJ to make her decision. The ALJ first relied upon the Kaiser physicians (Dr. Luh and Dr. Francis) to find that plaintiff suffered from obesity and mild ridiculopathy secondary to disc protrusion. Tr. 20. Assessing plaintiff's residual functional capacity, the ALJ analyzed the medical evidence, writing the following summary:

> There is no medical evidence prior to the claimant's date last insured. He requested a disability evaluation for back pain on September 2, 1997 (Exhibit 5F/13). This was done by Dr. Luh on September 8, 1997. As previously noted, Dr. Luh suspected that the claimant's low back pain was related to obesity. Dr. Luh added that it was "unlikely to get disability for this." (Exhibit 5F/12).
>
> A magnetic resonance imaging (MRI) of the lumbar spine was obtained, and Dr. Luh referred the claimant to a neurosurgeon [Dr. Francis] for evaluation (Exhibit 5F/9). The MRI report on September 29, 1997, noted left lateral L5-S1 disc protrusion causing narrowing of the left L5-S1 neural foramen, and apparently, compression of the existing left L5 nerve root (Exhibit 5F/3).
>
> The neurosurgeon reviewed the results of the MRI and examined the claimant on October 20, 1997. He reported the claimant ambulated in a normal fashion without evidence of disturbance. He was able to climb on to the examination table without difficulty. On exam, he had normal lumbar lordosis, no tenderness to the paravertebral muscles or the interspinatus ligament. Palpation over the left sciatic notch elicited pain. Range of motion of the lumbar spine was full in all directions. However, at the extremes of flexion, the claimant alleged he had increased left buttock discomfort. Deep tendon reflexes were 2/2 at the knees and ankle jerks, bilaterally. Motor was 5/5. Straight leg raising test was negative bilaterally. Plantar responses were downgoing. He was able to heel-tow walk

REPORT AND RECOMMENDATION - 7

> without difficulty. Dr. Francis' impression was the claimant had *mild* left S1 radiculopathy secondary to disc protrusion, left L5-S1. He recommended the claimant for conservative treatment, including physical therapy and anti-inflammatories. (Exhibit 5F/2). There is no evidence that he underwent physical therapy or any other form of treatment.
>
> Michael P. Carrol, MD., completed an evaluation form for the claimant for purposes of obtaining eligibility for general services. The claimant's representative interprets Dr. Carroll's statement to mean that the claimant could not work. However, this was related to his back, and Dr. Carroll actually deferred opinion until the claimant saw neurosurgeon. He said pain was a limitation, and did not specify how limiting. Particularly, he answered "unknown" to the question about whether treatment would restore the claimant's ability to perform at least half-time in a normal day, and deferred any opinion on duration to neurosurgeon (Exhibit 6F/2). State of Washington decided that the claimant could not work, but it was not specific. As previously noted, the neurosurgeon said the claimant walked without gait disturbance. He could move without difficulty. He described only mild radiculopathy and advised conservative treatment with physical therapy and anti-inflammatories. This is the extent of the medical evidence of record. Regarding the neurosurgeon's recommendations, he seemed to suggest the claimant would be able to return to function without surgical intervention rather than requiring long-term limitations of disability.

Tr. 22-23.

At the administrative hearing, plaintiff testified regarding his physical abilities prior to December 2006. The ALJ specifically referred to the neurologist's observations and asked plaintiff if sitting for a long period was a problem and how long plaintiff was able to sit. Tr. 436-37. Plaintiff stated that he was able to sit three to five hours without having a problem. Tr. 437. Plaintiff further stated that he would have been able to stand 45 minutes to an hour without needing to lean on something and he could walk about a block before needing to sit down. Tr. 437-48. Plaintiff told the ALJ that he was able to lift 50 to 60 pounds at a time in a safe manner and that he did not have any limitation in using his hands. Tr. 438. Plaintiff believed that he weight approximately 240-260 pounds prior to December 2006. Tr. 439-40. Although there is some minimal testimony from plaintiff's wife and an undated letter from his daughter, this evidence sheds almost no light on plaintiff's residual functioning capacity during the period in

REPORT AND RECOMMENDATION - 8

question. Therefore, plaintiff's testimony is uncontradicted and unambiguous, but entirely unsupported by medical evidence.

Relying on the evidence noted above, the ALJ stated, "In conclusion, based on the claimant's subjective allegations of back and left leg pain prior to his date last insured, and the mild findings reported in 1997, he was limited as described in the above assessments of his residual functional capacity." Tr. 24. The evidence properly reflects the ALJ's RFC, which was assessed as follows:

> He could sit eight hours in an eight-hour workday with normal breaks. He could stand for six hours in an eight-hour workday with the following restrictions: 30 minutes in a stationary position or merely taking a step of [sic] two, and up to one hour if he could lean on something. He could walk one block. He could lift a maximum of 50 to 60 pounds but no more than 10 pounds constantly. He was unable to bend, climb, squat, and kneel. He should avoid reaching overhead. He was able to push and pull within the pounds indicated, including up to 10 pounds constantly. He had no other manipulative limitations. He had no visual or communicative limitations. He should have avoided hazards and vibrations. He was able to get along with people, follow instructions, and concentrate without significant limitations

Tr. 21.

In sum, the ALJ properly relied upon substantial evidence of record to conclude that plaintiff retained the ability to work during the relevant period. The record was sufficiently complete and unambiguous, and thus, the ALJ did not need to call a medical expert to help determine or make any inferences regarding plaintiff's capabilities prior to the 1997 medical records.

*2. The ALJ Properly Assessed Plaintiff's Subjective Statements and The Lay Witness Evidence*

Credibility determinations are particularly within the province of the ALJ. Andrews, 53 F.3d at 1043. Nevertheless, when an ALJ discredits lay witness testimony concerning a claimant's ability to work the ALJ must provide reasons "that are germane to each witness." Nguyen v. Chater,

REPORT AND RECOMMENDATION - 9

100 F.3d 1462, 1467 (9th Cir.1996). The reasons "germane to each witness" must be specific. <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1054 (9th Cir.2006)(explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

Plaintiff argues that the ALJ improperly assessed plaintiff's credibility and the credibility of the lay evidence. Amended Opening Brief at 12. As shown above, the ALJ did not reject any specific allegation made by plaintiff. In contrast, it is clear that the ALJ relied heavily on the plaintiff's testimony at the hearing to fashion plaintiff's RFC. Plaintiff interprets the testimony to include the additional need to lie down to alleviate his pain, which is not part of the ALJ's RFC. Opening Brief at 3, 14. A review of the testimony in whole does not support the different interpretations. In context, the testimony regarding plaintiff's need to lie down is in direct response to his attorney's questions about a time in 1997 when he had insurance benefits, which allowed him the opportunity to see the medical providers at Kaiser Permanente. Tr. 445-46. It is not inconsistent with the ALJ's reliance on plaintiff's earlier testimony, which was incorporated into the RFC and accommodates plaintiff's need to switch positions to alleviate pain in his lower back. The court does not find any merit in plaintiff's argument that the ALJ erred by rejecting plaintiff's testimony or limited his credibility.

Next, plaintiff argues the ALJ erred when she failed to make any credibility assessment regarding the lay evidence provided by plaintiff's wife and plaintiff's daughter. Amended Opening Brief at 15-16. The ALJ specifically considered Ms. Duncan's testimony and the written statements from Ms. Burgess in her written decision. Tr. 22-23. The opinions of both lay witnesses are not inconsistent with plaintiff's own testimony regarding the history of events that lead to plaintiff's eventual disability. The ALJ properly focused on the relevant time period when she considered their statements. The ALJ did not specifically reject or accept the statements of Ms. Duncan, but the ALJ stated the following regarding Ms. Burgess:

REPORT AND RECOMMENDATION - 10

> While these statements do not refer to limitations beginning prior to the claimant's date last insured, the undersigned finds some of these restrictions may have been applicable in consideration of his subjective allegations of low back pain prior to his date last insured. Accordingly, restrictions in sitting, standing and walking as well as postural limitations have been included as part of the undersigned's assessment of claimant's residual functional capacity. There is no adequate objective basis to assign other limitations.

Tr. 23.

In sum, the ALJ properly addressed the lay witness statements. The ALJ properly relied upon the medical evidence produced in 1997, along with plaintiff's testimony regarding his physical abilities during the relevant time period to formulate a RFC. The lay evidence does not support a deviation from that finding. The court finds no error in the ALJ's treatment of the statements from plaintiff, plaintiff's wife, or plaintiff's daughter.

### 3. *The ALJ Properly Evaluated Plaintiff's Obesity*

Plaintiff argues that the ALJ found obesity as a severe impairment, but she failed to factor in or further discuss plaintiff's obesity. Amended Opening Brief at 23. The court finds no merit to this argument.

As discussed above, the court found no error in the ALJ's consideration of the medical opinions and plaintiff's testimony with respect to his physical condition and abilities during the relevant time period. Dr. Lou opined that plaintiff's low back pain was caused by his obesity, and the ALJ specifically relied upon Dr. Lou's opinion and assessment of plaintiff's condition. In further consideration of plaintiff's obesity, the ALJ found that plaintiff could only walk one block and that he could only stand for thirty minutes in a stationary position and stand for one hour if he could lean on something. The ALJ also found that he was unable to bend, squat, and kneel. Tr. 21. These restrictions were directly related to plaintiff's low back pain and obesity

REPORT AND RECOMMENDATION - 11

during the relevant period. From this record, it is clear that the ALJ properly considered plaintiff's obesity.

### *4. The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity at Step-Three*

"[R]esidual functional capacity" (RFC) is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b). If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. 20 CFR §§ 404.1527, 416.927.

Plaintiff's RFC was assessed as noted above. After reviewing the record, the undersigned finds the ALJ's RFC finding is properly supported by substantial evidence. The medical evidence relied upon by the ALJ supports the RFC assessment. The ALJ properly considered the relevant medical evidence regarding plaintiff's obesity and the credibility of plaintiff and the lay witnesses. Accordingly, the court rejects plaintiff's assertion that the ALJ erred in her RFC assessment.

## **CONCLUSION**

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 5, 2010, as noted in the caption.

DATED this 10th day of February, 2010.

*J. Richard Creatura*
J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13